In the Matter of COLT INDUSTRIES, INC., Petitioner, v NEW YORK CITY DEPARTMENT OF FINANCE, Respondent.

First Department, January 24, 1985

APPEARANCES OF COUNSEL

*Peter L. Faber* of counsel (*Steven F. Mount* with him on the brief; *Winthrop, Stimson, Putnam & Roberts,* attorneys), for petitioner.

· *Peter Rabinowitz* of counsel (*Thomas W. Bergdall, Cornelius F. Roche* and *Glenn Newman* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondent.

OPINION OF THE COURT

SANDLER, J. P.

In this CPLR article 78 proceeding to review a decision of the New York City Department of Finance (Department) issued after a statutory hearing, petitioner, Colt Industries, Inc. (Colt), seeks reversal of two final determinations, one assessing against petitioner a general corporation tax deficiency in the principal amount of $759,008, plus interest of $463,722.33 to July 31, 1983, a total of $1,222,730.33 for 1972, 1973 and 1974, and the second, denying petitioner's claim for a refund of general corporation tax for 1971 in the amount of $6,586.82.

The single issue raised in this proceeding concerns treatment for purposes of the general corporation tax of that part of a management fee charged by petitioner to its subsidiaries which represents petitioner's recovery of interest expense it incurred in securing financing from third-party lenders that it allocated to its subsidiaries. Underlying the determinations sought to be reviewed are two Department findings. First, that a portion of Colt's interest expense was attributable to its subsidiary capital and therefore not deductible from its entire net income under section R46-2.0 (subd 8, par [b], cl [6]) of the Administrative Code of the City of New York. Second, that no portion of the management fee collected by Colt from its subsidiaries constituted income from subsidiary capital which is excludable from its entire net income under section R46-2.0 (subd 8, par [a], cl [1]) of the Administrative Code.

The central position advanced by Colt is that these two determinations are fundamentally inconsistent with each other, and that the effect of both is to disturb the balance intended to be achieved by the relevant sections of the Administrative Code which appear to deny a deduction for interest attributable to subsidiary capital, or to income, gains or losses from subsidiary capital, because such income, gains or losses are not included in entire net income. We are in agreement with this contention by petitioner and accordingly vacate the determinations issued by

the Department to the extent that they are based on the inclusion of the interest portion of the management fee in entire net income.

The city's general corporation tax is an annual tax imposed on domestic and foreign corporations for the privilege of doing business, employing capital, owning or leasing property, or maintaining an office in the City of New York (Administrative Code, § R46-3.0, subd 1). The primary tax is based generally on entire net income. However, if a higher payment will result, one of three alternative bases must be used: business and investment capital, a percentage of interest plus certain salaries, or a flat rate minimum.

During the years in question, Colt paid a primary tax based either on business and investment capital or on a percentage of income plus certain salaries. After audit, as a result of the determinations at issue here, the Department found that a primary tax based on entire net income would be greater than the tax that had been computed on the other bases.

The issues in this case are best understood in light of a statutory scheme which divides a taxpayer's assets into three types of capital: subsidiary capital, investment capital, and business capital. Subsidiary capital is investment in stock of, and advances to, subsidiaries; investment capital is all investments in stocks and bonds and other securities, exclusive of subsidiary capital; and business capital embraces all assets other than subsidiary capital, investment capital and stock issued by the taxpayer.

Business income is taxed at a business allocation percentage, and investment income is taxed at an investment allocation percentage. Income from subsidiary capital is not taxed. Expenses attributable to business capital are deductible from business income and expenses attributable to investment capital are deductible from investment income. Expenses attributable to subsidiary capital are not deductible.

Subdivision 3 of section R46-2.0 of the Administrative Code defines subsidiary capital as here pertinent to mean "investments in the stock of subsidiaries and any indebtedness from subsidiaries * * * whether or not evidenced by written instrument, on which interest is not claimed and deducted by the subsidiary for purposes of taxation under this part or part three of this title".

The issue presented turns on the construction of section R46-2.0 (subd 8, par [a], cl [1]) and section R46-2.0 (subd 8, par [b], cl [6]) of the Administrative Code. The first provides: "Entire net

income shall not include: (1) income, gains and losses from subsidiary capital". The second provides in pertinent part: "Entire net income shall be determined without the exclusion, deduction or credit of * * * (6) in the discretion of the director of finance, any amount of interest directly or indirectly and any other amount directly attributable as a carrying charge or otherwise to subsidiary capital or to income; gains or losses from subsidiary capital".

The essential facts appear to be undisputed. Petitioner is a holding company which provides managerial services for its operating subsidiaries engaged in manufacturing various industrial products. Petitioner's only business is the management of its subsidiaries, in the course of which it incurs various expenses, including amounts for wages, rent and supplies. Under an arrangement with its subsidiaries, Colt was reimbursed for all of the expenses incurred by it on their behalf by charging them a single "management fee", which fee represented a cost recovery device and did not contain a profit element, and was allocated among the subsidiaries on the basis of their projected gross sales for the year.

During the years in question, Colt borrowed money on a long-term basis from third-party lenders and used these funds to make advances to its subsidiaries for use as working capital. Colt was reimbursed by its subsidiaries for the interest expense it incurred on these loans as part of the management fee. Although the percentage of the management fee attributable to Colt's recovery of its interest expense is ascertainable, and indeed the amounts appear not to be in dispute, Colt and its subsidiaries did not on their books and tax returns identify any portion of the management fee as interest income or expense, nor were the subsidiaries aware of the amount of the net income expense factor included in the management fee charged them.

On its original returns for the years 1971 through 1974, Colt included the entire management fee in its taxable income and therefore deducted all of the interest it paid to third-party lenders along with its other expenses incurred to conduct its managerial activities. Similarly, Colt's subsidiaries, in their original returns for the same years, deducted the entire management fees they paid to Colt without labeling any portion of the fee on their returns as "interest". It is Colt's contention, and appears to be the fact, that the treatment of these payments adopted by Colt produced essentially the same result in terms of Colt's general corporate tax as if Colt had excluded the interest portion of the management fee and had not deducted interest

expense attributable to the advances, since the amount of interest expense attributable to the advances was equal to the portion of the management fee which was interest income.

In 1976, a Department audit of Colt's tax returns for the years 1971 through 1974 was suspended pending an examination of those returns by the New York State Tax Commission pursuant to the State Franchise Tax Law (Tax Law, § 208 *et seq.*), which in all essential respects is identical with the relevant sections of the New York City Administrative Code. The State concluded that a portion of the management fee was interest which should properly be excluded from Colt's income as interest income from its subsidiaries, and that, accordingly, a portion of the related interest expense to third-party lenders was not deductible because it was directly or indirectly attributable to its excluded income.

On Colt's report of these State audit adjustments, the Department adjusted Colt's tax liability under the Administrative Code for the years in issue, resulting in a small increase in Colt's liability for 1972 through 1974, and a refund for 1971. The Department then recommenced its audit resulting ultimately in the determinations here sought to be reviewed, determinations which are fundamentally inconsistent with that reached by the State under an identical law.

The parties are in agreement that the portion of Colt's management fees represented by interest expense was attributable to subsidiary capital and therefore not deductible under section R46-2.0 (subd 8, par [b], cl [6]) of the city's Administrative Code, previously quoted. The disagreement arises over the Department's further determination that no portion of the management fees charged, including the part that represented the reimbursement to Colt for the payment of interest expense, was income from subsidiary capital, excludable from entire net income for city tax purposes under section R46-2.0 (subd 8, par [a], cl [1]) of the Administrative Code, previously quoted.

In support of this apparently anomalous determination, the Department contends: (1) that Colt elected to treat its management fee as a single charge, not breaking it down in its component elements, and is accordingly bound by the form of the transaction that it chose, the right to disregard the form in favor of the substance of the transaction being exclusively vested in the taxing authority; (2) that in any event, the portion of the management fee designed to reimburse petitioner for its interest expense was not interest paid by Colt subsidiaries because the fee was allocated on the basis of projected gross sales rather than

on the basis of the amounts actually advanced to each; and (3) that the petitioner's recoupment of its interest expenses through the management fee did not make the portion of the management fee so applied interest income any more than, illustratively, its application of another portion of the fee to pay rental expenses made that part rental income.

■ Preliminarily, we are not persuaded that our inquiry into the issue is foreclosed by the claimed rule that it is exclusively for the taxing authority to determine whether tax liability should be evaluated on the basis of the form or substance of the transaction. Significantly, in *Spector v Commissioner of Internal Revenue* (641 F2d 376), an authority heavily relied on by the Department, it was observed that the courts have recognized an exception to the principle asserted here by the Department, "and will allow a taxpayer to challenge the form of a transaction when necessary to avoid unjust results" (at p 382). (See, also, *Frelbro Corp. v Commissioner of Internal Revenue,* 315 F2d 784.)

Turning to the substantive issue dividing the parties, an issue argued at length in unusually able briefs, we are persuaded that the Department has presented what might well have been considered in another statutory context an adequate basis for the position that no part of the management fee should be evaluated as interest for tax purposes. Indeed, it appears a realistic judgment that neither Colt nor its subsidiaries understood that any part of the management fee represented interest to Colt for moneys it had advanced to its subsidiaries. The problem with the Department's position, however, arises from a consideration in context of the two sections of the Administrative Code whose construction is critical to the issue presented.

As already observed, section R46-2.0 (subd 8, par [a], cl [1]) excludes from entire net income "income, gains and losses from subsidiary capital". Section R46-2.0 (subd 8, par [b], cl [6]) denies deductability, in the discretion of the director of finance, of "any amount of interest directly or indirectly * * * attributable * * * to income; gains or losses from subsidiary capital". We think it clear that the two sections were intended to be considered together. So viewed, the conclusion seems to us difficult to avoid that the latter section was designed to prevent a taxpayer claiming a deduction for expenses incurred in connection with income that was not taxable. Indeed, no alternative explanation has been presented by the Department in its otherwise comprehensive, persuasively reasoned brief.

■ In short, we believe that the Department's rulings erroneously upset the balance intended to be achieved by the sections

in question. If the portion of the management fee in issue here was business income to Colt, and therefore not excludable from entire net income, corresponding expense incurred by Colt should have been evaluated as an expense attributable to business capital. Similarly, if the application of that portion of the management fee to interest expense is to be considered an expense attributable to subsidiary capital, and not deductible as such, that portion of the management fee should likewise be considered nontaxable income from subsidiary capital.

No doubt a different issue would have been presented if there was support for the conclusion that the form in which the transaction was cast by Colt was designed to secure an inappropriate tax advantage. There is at least a suggestion in the record that the Department may have been influenced in part in its determination by some such suspicion. However, from a study of the record it seems clear that any benefits derived by Colt's subsidiaries from the form of the transactions were negligible, and that the device of a single management fee was shaped, not by a tax avoidance purpose, but rather by considerations of administrative and financial efficiency and economy.

Accordingly, the determination of the New York City Department of Finance dated June 24, 1983, assessing general corporation tax deficiencies against petitioner for the years 1972, 1973 and 1974, and denying petitioner's claim for a refund for the year 1971, should be vacated, on the law, without costs, and the matter remanded to the Department for further proceedings.

ASCH, FEIN and KASSAL, JJ., concur.

Determination of the respondent dated June 24, 1983, unanimously vacated, on the law, without costs and without disbursements, and the matter remanded to the Department for further proceedings.