OPINION OF THE COURT
Jasen, J.
The issue presented upon this appeal is whether the management fee imposed by petitioner upon its subsidiary corporations included interest income from subsidiary capital, and was to that extent excludable from entire net income for purposes of the New York City general corporation tax.
Petitioner, Colt Industries, Inc., a Pennsylvania corporation with its headquarters in New York City, is the successor in interest by merger to Colt Industries, Inc., a Delaware corporation, which was the taxpayer during the years in issue.[1] Colt was both a managing company and a holding company. As a management company, Colt’s functions and responsibilities were in the areas of general management, policy development and formation, and centralized service functions. As a holding company, Colt owned all the stock of operating subsidiaries. Colt’s principal subsidiaries were Crucible, Inc., Colt Industries Operating Corp., Central Moloney, Inc. and Trent Tube B.V. In its capacity as a holding company, Colt served as the principal financing vehicle for its subsidiaries, borrowing money from third-party lenders and advancing funds to its subsidiaries to satisfy their working capital needs. Funds borrowed by Colt which were not needed by the subsidiaries at the time of each loan were temporarily invested in short-term securities for cash management purposes. Colt performed this borrowing function on behalf of its subsidiaries on a centralized basis because, by backing each loan with the combined assets of all the subsidiaries, it could borrow funds at more favorable rates and terms than could the subsidiaries acting individually.
In order to recover its operating costs, which included general administrative, selling and net interest expenses, incurred for services rendered to its subsidiaries, Colt imposed upon each of its subsidiaries a charge, denominated by Colt a "management fee”. This management fee was based upon a percentage of the gross projected sales of each subsidiary. In *469 determining the percentage of sales to be charged in a given year, Colt estimated its over-all head office operating costs which included general administrative, selling and net interest expenses. Colt then estimated the sales of each subsidiary for the coming year and totaled all of its projected sales. This ratio of parent costs over subsidiary sales constituted the percentage of sales which Colt generally charged each subsidiary as a management fee for the coming year.
The management fee imposed upon the subsidiaries by Colt included an interest factor. The interest factor of the management fee represented Colt’s net interest expense, determined by subtracting from its gross interest expense the estimated income it derived from temporarily investing funds borrowed from third-party lenders in short-term money market instruments. The management fee did not contain a profit element. During the years in question, the major portion of the management fee represented interest expenses. Colt, however, failed to identify any portion of the management fee as interest income on its books or tax returns. Similarly, the subsidiaries did not label the management fee as "interest” upon their tax returns. The management fee represented a unified charge for all services rendered by Colt to its subsidiaries, and while the fee contained an interest factor, it could not, according to the New York City Department of Finance (Department), be broken down into component parts.
The Department issued notices of determination dated September 28, 1978, advising Colt that there were due general corporation tax deficiencies for the years 1971 through 1974. Colt filed a timely petition for redetermination of such deficiencies and, further, sought a refund of general corporation tax for 1971. Before the Department, Colt contended that a portion of the management fees paid to Colt by its subsidiaries contained a verifiable interest factor, so that the management fee constituted income from subsidiary capital which is excludable from entire net income under New York City Administrative Code § R46-2.0 (8) (a) (1). The Department disagreed with this view, and determined that there existed a deficiency in New York City general corporation tax in the principal amount of $759,008 plus interest of $463,722.33, representing a total of $1,222,730.33 for 1972, 1973 and 1974. The Department also denied Colt’s claim for a refund of general corporation tax for 1971 in the amount of $6,586.82. Colt commenced this article 78 proceeding to review the determination of the Department. The Appellate Division vacated that determina *470 tian of the Department, dated June 24, 1983, and thereby reversed the assessment of deficiencies against Colt for the years 1972-1974 and the denial of Colt’s refund claim for 1971. For the reasons that follow, we now reverse the judgment of the Appellate Division.
The Administrative Code of the City of New York (Administrative Code) provides that for the privilege of doing business in the City of New York, every domestic or foreign corporation shall annually pay a tax upon the basis of its entire net income. (Administrative Code § R46-3.0 [1].) Entire net income is defined as "net income from all sources which shall be the same as the taxpayer’s federal taxable income” subject to certain modifications. These modifications, insofar as are relevant to this appeal, are set forth in Administrative Code § R46-2.0 (8) (a) (1) and § R46-2.0 (8) (b) (6).[2] Administrative Code § R46-2.0 (8) (a) (1) provides that a taxpayer can deduct "income, gains and losses from subsidiary capital”.[3] Also, section 3-11 (b) (2) (i) of the New York City General Corporation Tax Regulations provides that a taxpayer may deduct from Federal taxable income "all dividends, interest and gains from subsidiary capital * * * but not any other income from subsidiaries.”
At the outset of our discussion, it is necessary to set forth our standard of appellate review. As stated in Kurcsics v Merchants Mut. Ins. Co. (49 NY2d 451, 459), "[w]here the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be *471 drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld (Matter of Howard v Wyman, 28 NY2d 434; cf. Ostrer v Schenck, 41 NY2d 782, 786)”. Moreover, it is the taxpayer’s burden to establish its entitlement to an exclusion from tax. (Matter of Mobil Oil Corp. v Finance Administrator, 58 NY2d 95, 99.) In this case, the determinations of the Department were based upon a characterization of the management fee, as well as an analysis of the structure and function of said fee. The Department’s evaluation of the management fee is, of course, sharply disputed by Colt. Under these circumstances, the role of this court is to ascertain whether the Department’s construction of Administrative Code § R46-2.0 (8) (a) (1) and its concomitant tax treatment of the management fee were irrational or unreasonable.
Pursuant to Administrative Code § R46-2.0 (8) (a) (1), taxpayers are entitled to exclude, in computing entire net income, interest income from subsidiary capital. The Department, construing Administrative Code § R46-2.0 (8) (a) (1), determined that Colt’s management fee, while technically income from a subsidiary, was not shown to be "income from subsidiary capital”. This view is, under the circumstances presented by this appeal, neither irrational nor unreasonable. Colt itself chose to treat the amounts now claimed to be interest income as an undenominated part of a lump-sum management fee, not matched in form or substance to borrowings, and to characterize the fee on its books and tax returns (as did its subsidiaries) as business income (or business expense). The management fees collected by Colt from its subsidiaries were based upon a fixed percentage of the estimated volume of the subsidiaries’ projected gross sales. The management fee was not assessed according to the level of management services received by the subsidiaries, nor was it based upon the amount borrowed by any particular subsidiary or the amount of income generated by Colt’s investment in each subsidiary. Nor can it be said, on this record, that the management fee directly reflected compensation paid by the subsidiaries to Colt for use of the latter’s funds especially since the subsidiaries failed to identify any portion of the fee as "interest” upon their tax returns. Recognizing that the management fee did not represent income resulting from the investment of capital, and the unified, nondivisible charge was not identified by Colt as interest income, and was, in reality, directly correlated to a *472 fixed percentage of subsidiary sales, the determination of the Department that the management fee was not "income from subsidiary capital” was both rational and reasonable.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, the June 24, 1983 determination of the New York City Department of Finance reinstated, and the petition dismissed.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur.
Judgment reversed, etc.

. For the purposes of clarity, "Colt” hereinafter refers only to the taxpayer.

. As noted by the Appellate Division, "[t]he parties are in agreement that the portion of Colt’s management fees represented by interest expense was attributable to subsidiary capital and therefore not deductible under section R46-2.0 (subd 8, par [b], cl [6]) of the city’s Administrative Code”. (106 AD2d 59, 63.) Accordingly, we review only the Department’s construction of New York City Administrative Code § R46-2.0 (8) (a) (1).

. " 'Subsidiary capital’ ” is defined, pursuant to Administrative Code § R46-2.0 (3) as: "investments in the stock of subsidiaries and any indebtedness from subsidiaries, exclusive of accounts receivable acquired in the ordinary course of trade or business for services rendered or for sales of property held primarily for sale to customers, whether or not evidenced by written instrument, on which interest is not claimed and deducted by the subsidiary for purposes of taxation under this part or part three of this title, provided, however, that, in the discretion of the director of finance, there shall be deducted from subsidiary capital any liabilities payable by their terms on demand or within one year from the date incurred, other than loans or advances outstanding for more than a year as of any date during the year covered by the report, which are attributable to subsidiary capital”.