[896 NYS2d 800]

KATE ADE et al., Plaintiffs, v RIVERVIEW REDEVELOPMENT COMPANY, LP, et al., Defendants.

Supreme Court, Bronx County, January 7, 2010

### APPEARANCES OF COUNSEL

*Urban Justice Center*, New York City (*Garrett Wright* of counsel), for plaintiffs. *Michael B. Doyle*, Bronx, for defendants.

### OPINION OF THE COURT

JOHN A. BARONE, J.

The motion by plaintiffs Kate Ade, Akwamoa Afrifa, Cora Bennett, Charles Cobbinah, Susan Dawson, Velma George, Naomi Jenkins, Teresa Johnson, Shirley Lyles, Maribel Maldonado, Lorraine Reed and Genoveva Zavala (cumulatively, the

plaintiffs) and the cross motion by defendants Riverview Redevelopment Company, LP (RRC) and Grenadier Realty Corp. (GRC) (cumulatively, the defendants) are consolidated for the purposes of this decision by the court.

Plaintiffs have moved pursuant to CPLR 6301 and 6311 for a temporary restraining order (TRO), followed by a preliminary injunction, barring the defendants, and their agents and attorneys, from commencing any proceeding against the named plaintiffs in the New York City housing courts during the pendency of this action and staying any current relevant Bronx County housing court proceedings,* as well as such other relief as may be deemed just and proper by the court.

As of this writing, a TRO, granted in an order signed by this court on September 29, 2009, is in place pending the decision of this motion and cross motion.

Defendants cross-move for an order of the court dismissing each and every cause of action contained in plaintiff's complaint, as well as for the immediate dissolution of the pending TRO. Defendants further demand the denial of any and all relief as sought by plaintiffs in the pending motion.

Oral argument was heard by this court from the representatives of the opposing parties on October 26, 2009.

The 12 plaintiffs are all leaseholding tenants in possession of units in the residential building owned by defendant RRC and managed by defendant GRC at 1600 Sedgewick Avenue, Bronx County. The building was fully occupied prior to January 1, 1974.

In 1971, defendant RRC obtained a mortgage of approximately $11 million to help finance the building of the structure at the location. As defendants obtained this mortgage with the help of the federal government pursuant to section 221 (d) (3) of the National Housing Act (NHA) (codified at 12 USC § 1715*l* [d] [3]), it was subject to an agreement with the Department of Housing and Urban Development (HUD) which strictly regulated annual rent increases applicable to the housing units created in the project. It is clear that the intended governmental purpose of the NHA, indeed the primary intent behind all of HUD, was to encourage the creation of private housing which

---

* Said stay would include, but is not limited to, L & T index Nos. 6283/2008, 27684/2009, 48786/2009, 48789/2009 and 48791/2009 as previously commenced against the respective plaintiffs Johnson, Cobbinah, Maldonado, Zavala and Bennett, each action seeking eviction alleging nonpayment of the required rent.

would be affordable for citizens of limited and low economic means. More specifically, plaintiffs contend that approximately 80 units at the location, including their own, were subject to the rent guidelines set forth under HUD's Below Market Interest Rate (BMIR) program. Landlords are only eligible for the BMIR program, with the accompanying governmentally subsidized mortgage rate, if their buildings participate in a low-income housing program.

On or about November 6, 2008, the NHA § 221 (d) (3) mortgage on the location was prepaid by defendant RRC. By reason of this prepayment, as of February 1, 2009, it is uncontested that the previous federal regulation and oversight as to the imposition of rent was terminated, and the increases thereof on said apartments ceased to be subject to federal rent regulation. As previously noted, the evidence establishes that each of the named plaintiffs has been, and is, a tenant in possession of an apartment in the location.

On or about December 12, 2008, RRC sent out a letter to all tenants at the location announcing the prepayment of the mortgage and informing them of the fact that the prior federal rent regulations were no longer in effect. The letter also announced the new, and higher, monthly rent for one-, two- and three-bedroom apartments, effective February 1, 2009. It is unrefuted that these new rents were calculated by the defendants with the understanding that, despite the fact that the location was constructed and opened prior to 1974, the location, and the apartments therein, were not subject to the rules of the New York City Rent Stabilization Law (RSL).

The defendants contend that the location is "exempt" from the effects of the RSL and have undertaken to enforce payment of the new higher rents going so far as to institute eviction proceedings against the named tenants for alleged nonpayment of rent.

Plaintiffs challenge the legality of the newly increased rent tables. On or about September 28, 2008, plaintiffs commenced the underlying cause of action which seeks, inter alia, an injunction precluding the defendants from charging and/or collecting the increased rents, a declaration by the court that their units, and those of all former BMIR tenants at the location are subject to the regulations and guidelines of the RSL, and other related forms of relief.

The plaintiffs counter the defendants' arguments, contending, inter alia, that despite the fact the defendants prepaid their

federally underwritten mortgage, they, the tenants, are still entitled to the limited benefit of the RSL in this pre-1974 multi-unit residential building. In support of their position, the plaintiffs rely, inter alia, on the uncontested fact that defendants have received, and continue to receive, the beneficial real estate tax abatement relief afforded them pursuant to New York City's "J-51" law (Administrative Code of City of NY § 11-243). Plaintiffs argue that, due to the fact that defendants receive, and continue to receive, a tax benefit from the J-51 program, the location "must be subject to rent stabilization for the period in which such benefits are received."

The papers before the court indicate the J-51 program in which the location participates will continue to provide tax abatements for the location's New York City taxes until 2014.

Defendants respond that while they have prepaid their HUD mortgage they have not opted out or dissolved their corporation and thus still maintain their status as a Private Housing Finance Law corporation and are therefore not subject to the RSL. It is on this point of law that the parties have drawn issue.

Governing Law

Courts' forays into New York City's complex area of rent control and stabilization are analogous to the experience of American armored units in the hedgerow country of Northwestern Europe during World War II. To paraphrase my uncle who was a veteran of that campaign—it was easy enough to get in but extremely difficult to get out. No less an authority than our own Court of Appeals has described these laws as "an impenetrable thicket." (*Matter of 89 Christopher v Joy*, 35 NY2d 213, 220 [1974].) Nevertheless our own Appellate Division, First Department has bravely dared to enter this tangle and has written a recent learned opinion in a case similar to the one before this court *Roberts v Tishman Speyer Props., L.P.* (62 AD3d 71 [1st Dept 2009, Nardelli, J.]). Even more recently the Court of Appeals wrote on this same matter affirming the Appellate Division in an equally learned opinion with an equally learned dissent by Judge Read. (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 288 [2009].)

Plaintiff contends that these decisions are controlling in this case. Defendant avers that they are not.

New York City has developed a program for multiple dwellings offering tax incentives for landlords who rehabilitate or

improve their property. (Administrative Code of City of NY § 11-243.) The City has established the so called J-51 program which grants tax relief to owners who make specified improvements to their properties including moderate or total rehabilitation, loft conversions, asbestos abatement or boiler replacement. (Administrative Code § 11-243 [b] [2], [3], [8].) This program has been authorized by New York State. (RPTL 489.) In order to qualify for tax relief, applicants must register with the State Division of Housing and Community Renewal (DHCR) and are subject to rent stabilization while the benefits are in force. It is undisputed that plaintiffs applied for and are still receiving J-51 benefits. (28 RCNY 5-03 [f].)

To further complicate matters, the State Legislature enacted the Rent Regulation Reform Act of 1993 (RRRA) (L1993, ch 253). The purpose of this act was to provide decontrol or deregulation of certain rent-stabilized apartments deemed "luxury." Luxury apartments were vacant apartments in which the regulated rent was $2,000 per month or more and the combined income of all occupants was greater that $250,000 per year. But certain apartments were excluded from the exclusion; specifically those apartments which received benefits under the J-51 program. In the meantime the Legislature expanded the definition of luxury apartments to include households earning $175,000 per year along with various other changes. (Rent Stabilization Law of 1969 [Administrative Code] §§ 26-504.1, 26-502.)

In 1996 DHCR issued an advisory opinion stating that participation in the J-51 program only precluded luxury decontrol where the receipt of such benefits is the sole reason for the building being subject to rent regulation. In 2000 DHCR amended its own Rent Stabilization Code (RSC) to provide that luxury decontrol

"shall not apply to housing accommodation which became or become subject to the RSL and this Code:

"(i) solely by virtue of the receipt of tax benefits pursuant to [the J-51 program]." (Rent Stabilization Code [9 NYCRR] § 2520.11 [r] [5]; [s] [2].)

With respect to this Code provision, DHCR issued Fact Sheet 36—"High-Rent Vacancy Decontrol and High-Rent High-income Decontrol"—which specified that apartments that are subject to rent regulation only because of the receipt of J-51 benefits do not qualify for high-rent vacancy decontrol.

The Appellate Division, in its subsequent review of the DHCR regulations cited above, concluded that building owners who receive J-51 benefits forfeited their rights under luxury decontrol provisions even if their buildings were already subject to the RSL. (*Roberts v Tishman*, 62 AD3d 71 [2009].) Thus the Appellate Division rejected the interpretation of the DHCR.

In *Roberts v Tishman Speyer Props., L.P.* (7 NY3d 270 [2009]), the Court of Appeals affirmed the Appellate Division. It rejected the interpretation of DHCR that a rental unit can become subject to the RSL only when it passes from being unregulated to being regulated, that is, when it was a previously unregulated building which then became regulated only due to its receipt of J-51 tax benefits. The Court of Appeals ruled that the proper interpretation of the RRRA is that no building which participates in the J-51 program is subject to luxury decontrol.

Discussion

A close examination of the facts and circumstances in this case leads this court to conclude that this matter is controlled by the *Roberts* opinion. While defendants have prepaid their HUD mortgage and are thus released from the rent restrictions of HUD's BMIR program, they continue to receive J-51 tax benefits.

Defendants attempt to distinguish their clients' situation from that of the landlord in the *Roberts* case by pointing out that defendant never opted out of its status as a Private Housing Finance Law article V redevelopment company. Nevertheless there is no evidence before the court that defendants are now under any rent regulation apart from the RSL. Once defendants prepaid their mortgage it appears that they ceased to be subject to the regulations attendant to that mortgage. Nevertheless they are benefitting from the J-51 tax abatement program.

Similarly situated landlords in the *Roberts* case pointed out to the court that their motivation in prepaying their underlying mortgage was to free themselves from any and all rent regulation. They stated that in so doing they were guided by existing DHCR regulations and to deny them relief from said regulation would cause them great economic harm. The Court of Appeals addressed this issue directly and rejected it saying, "If the statute imposes unacceptable burdens, defendants' remedy is to seek legislative relief." (*Roberts*, 13 NY3d at 287.) The Court has thus given its unequivocal opinion that the only correct interpretation of the statute is that all buildings receiving J-51

tax abatement will continue to be subject to the RSL. Thus the court finds *Roberts* to be controlling in this case. Accordingly, by the authority of that case this court concludes that the defendants in this case continue to be subject to the RSL.

In addition plaintiffs are not required to post a bond or undertaking in this matter. There has been no showing the defendants will suffer any harm if ultimately a permanent injunction is not granted since they will then have their right to litigate this matter in housing court. In the meanwhile they will continue to be able to collect the rent authorized by the RSL.

Conclusion

Plaintiffs' motion for a preliminary injunction barring defendants from commencing or maintaining summary eviction proceedings against plaintiffs is granted.

Plaintiffs will not be required to post a bond or undertaking.

Defendants' cross motion to dismiss this action is denied.