■ In the Matter of 108 Realty LLC, Appellant, v Department of Housing Preservation and Development of the City of New York et al., Respondent. [923 NYS2d 50]—

Order and judgment (one paper), Supreme Court, New York County (Carol R. Edmead, J.), entered January 12, 2010, dismissing the petition to annul the determination of respondent Department of Housing Preservation and Development (HPD), dated June 5, 2009, which denied petitioner's application for tax benefits under the J-51 tax incentive program, unanimously affirmed, without costs.

Initially, we note that Supreme Court properly entertained respondents' motion to dismiss, which was based solely on a point of law and did not dispute any of the facts alleged by petitioner (*see* CPLR 7804 [f]; *Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County*, 63 NY2d 100 [1984]). Furthermore, contrary to petitioner's contention, its allegation that the "sole basis" for HPD's determination was that the premises at issue were "converted from a Class B SRO [single room occupancy] into a Class A Multiple Dwelling by private funding" need not be credited on this motion to dismiss because it is a legal conclusion (*see Kliebert v McKoan*, 228 AD2d 232 [1996], *lv denied* 89 NY2d 802 [1996]).

Real Property Tax Law § 489, the J-51 enabling statute, provides, in pertinent part, that J-51 benefits "shall not apply to any conversion of or alteration or improvement to *any class B multiple dwelling or class A multiple dwelling used in whole or in part for single room occupancy*, . . . unless such conversion, alteration or improvement is carried out with . . . substantial assistance from any [government] agency or instrumentality" (RPTL 489 [13] [emphasis added]; *see* 28 RCNY 5-04 [a] [4]; *see also* 28 RCNY 5-03 [a] [1]). Petitioner concedes that the conversion of its building from a class B multiple dwelling to a class A multiple dwelling was "entirely privately funded." It argues that HPD's determination is arbitrary and capricious because the building never was an SRO. Thus, the issue before us is whether the phrase "used in whole or in part for single room occupancy" in RPTL 489 (13) modifies "class A multiple dwelling" only or "class B multiple dwelling" as well. We conclude that the phrase modifies "class A multiple dwelling" only.

Administrative Code of City of NY § 11-243 (formerly § J51-2.5) incorporates the definition of "multiple dwellings" set forth in the Multiple Dwelling Law (*see* Administrative Code § 11-243 [a] [5]). The Multiple Dwelling Law divides multiple dwellings into two classes: class A and class B (§ 4 [7]). A class A multiple

dwelling is defined as "a multiple dwelling which is occupied, as a rule, for permanent residence purposes" (Multiple Dwelling Law § 4 [8] [a]). By contrast, a class B multiple dwelling is defined as "a multiple dwelling which is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals" (Multiple Dwelling Law § 4 [9]). Single room occupancy is defined as "occupancy by one or two persons of a single room, or of two or more rooms which are joined together, separated from all other rooms within an apartment in a multiple dwelling, so that the occupant or occupants thereof reside separately and independently of the other occupant or occupants of the same apartment" (Multiple Dwelling Law § 4 [16]). Notably, while the statute provides that a class A multiple dwelling "used wholly or in part for single room occupancy . . . remains a class A multiple dwelling" (*id.*), it makes no such provision for a class B multiple dwelling, which is, by definition, "transient" housing such as SROs are commonly understood to provide.

Although there are only two classes of multiple dwellings, the statute does not provide that J-51 benefits are inapplicable to "any multiple dwelling used in whole or in part for single room occupancy"; it names both classes, in the disjunctive, and adds a qualifying phrase after the second: "any class B multiple dwelling or class A multiple dwelling used . . . for [SRO]." (RPTL 489 [13].) Thus, we conclude that the Legislature intended to distinguish between any class B multiple dwelling whatsoever and any class A multiple dwelling used for SRO. Indeed, in its determination, HPD stated that its review of Building Department records indicated that petitioner's "was a Class B multiple dwelling prior to the privately-financed conversion into a Class A multiple dwelling." It did not find that petitioner's building was a class B multiple dwelling used for SRO.

We note that the foregoing interpretation comports with the principle that tax exemption statutes should be strictly construed (*see Matter of Colt Indus. v New York City Dept. of Fin.*, 66 NY2d 466, 471 [1985]; *Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N.Y.*, 16 NY2d 222, 230 [1965]).

We reject petitioner's argument that *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.* (70 NY2d 451 [1987], *appeal dismissed* 485 US 950 [1988]) compels a different outcome. The issue before the *Replan* Court was the constitutionality of the retroactive application of amendments to former RPTL 489 that were enacted to "eliminat[e] the tax

incentive to convert SRO's" to non-SRO class A housing (70 NY2d at 455). The Court did not hold, as petitioner suggests, that conversions of non-SRO class B multiple dwellings automatically qualified for J-51 tax treatment. Indeed, *Replan*'s retroactive denial of J-51 benefits to a conversion of a class B SRO to a non-SRO class A dwelling is not inconsistent with respondents' interpretation of RPTL 489 in the instant case. In that case, no reference was made to the "government assistance" clause of RPTL 489 (13) that is critical to the determination in this case. Concur—Friedman, J.P., Sweeny, DeGrasse and Abdus-Salaam, JJ. **[Prior Case History: 2010 NY Slip Op 30029(U).]**