OPINION OF THE COURT
Susan F. Avery, J.
Petitioner commenced this nonpayment summary proceeding seeking claimed rental arrears. Respondents filed an answer asserting defenses and counterclaims and the matter appeared on this court’s calendar on November 19, 2013. On that date, the case was adjourned. Thereafter, by notice of motion dated December 16, 2013, counsel for the petitioner filed the instant *320 motion seeking an order dismissing the respondents’ second through fourth affirmative defenses and counterclaims and fifth counterclaim.
Respondents oppose the motion and cross-move for partial summary judgment on their defenses and counterclaims. Petitioner opposes the cross motion. On the date the instant motion and cross motion were submitted to this court, counsel for respondents filed a notice of appearance and argued in opposition to petitioner’s motion and in support the respondents’ cross motion.
Facts Alleged
The facts underlying this proceeding are largely undisputed. The parties agree that the respondents entered into possession of the premises pursuant to a written lease dated January 4, 2012 for a term to commence February 1, 2012 and to terminate July 31, 2013. The agreed upon monthly rent was $3,180 (petitioner’s motion, exhibit D), and the rider annexed to the lease provided that the monthly rent would be a preferential $2,850 for the first year of the lease (from Feb. 1, 2012 through Jan. 31, 2013) and would be $2,900 for the balance of the lease term (from Feb. 1, 2013 through July 31, 2013) (see petitioner’s motion, exhibit D). At the commencement of the tenancy petitioner accepted $8,650 from the respondents as security/ excess rent. The “[Respondent’s were the first tenants of the premises when they took possession on February 1, 2012” (see Mark Burstiner aff, dated Jan. 6, 2014, ¶ 7).
The initial lease and rider were in conformity with a free market apartment rental. Petitioner alleges that at the inception of the tenancy, the apartment was a free market apartment, located in a new construction building and not subject to the Rent Stabilization Law of 1969 (RSL) (Administrative Code of City of NY § 26-501 et seq.) or the Rent Stabilization Code (RSC) (9 NYCRR 2520.1 et seq.) (see petitioner’s affirmation in support of motion ¶ 2; aff ¶ 6). The parties contend that effective July 1, 2012, five months after the respondents took possession of the premises, the landlord received a “421-a tax abatement”[1] (petitioner’s affirmation in support of motion ¶¶ 2, 5; aff ¶ 7) and as a result the apartment is subject to the RSL, the disagreement being the date the rent regulation took effect.
*321 Arguments
Second Affirmative Defense and Counterclaim
Allegation(s)
Respondents’ second affirmative defense and counterclaim alleges deceptive business acts by the petitioner. Specifically, the respondents’ answer claims that petitioner violated General Business Law § 349 and Administrative Code of the City of New York § 20-700, as follows: by failing to inform respondents that the apartment was subject to the RSL; by omitting from the lease a proper lease rider indicating the premises’ regulatory status and notice of owner’s and tenant’s rights as required by the RSL; by incorrectly stating the legal base rent, the justification for the base rent, the actual rent paid and the applicability or inapplicability of a preferential rent; by failing to offer a proper lease, in that the lease offered was for 18 months which is contrary to the RSL requirement that a one- or two-year lease, at the tenant’s option, must be offered; by unlawfully demanding and collecting a security deposit in excess of one month’s rent; and by unlawfully increasing the rent during the lease term in violation of the RSL (see answer ¶¶ 5-13).
Petitioner’s Arguments
Second Affirmative Defense and Counterclaim
Petitioner argues that respondents’ second affirmative defense and counterclaim must be stricken because “[o]n July 1, 2012, the subject building became a recipient of the 421-A-Newly Constructed Multiple Dwelling Residential Property Tax Exemption Program [sic] [and then] became subject to the regulation under the Rent Stabilization Code, for the limited duration of the tax exemption period [through June 30, 2027]” 0see petitioner’s affirmation in support of motion ¶ 5, exhibit E). Petitioner asserts that because the apartment became subject to the RSC and RSL, five months after the commencement of the lease, petitioner was not required to offer a vacancy lease with annexed riders in conformity with the RSC and RSL in the initial lease.
Petitioner concludes that because the premises were not rent regulated at the commencement of the lease, it was not required to inform respondents that the premises were subject to rent regulation and therefore: (1) there is no deceptive business practice or false representation; and (2) petitioner was not required to offer a vacancy lease with riders nor comply with the provisions of the RSC and RSL at the inception of the tenancy. Therefore, according to petitioner, respondents’ second affirmative defense and counterclaim must be dismissed, and the cross motion denied.
*322 Respondents’ Opposition and Cross Motion[2]
Second Affirmative Defense and Counterclaim
Respondents contend that the apartment was subject to the RSL at the time they signed the lease, and as a result, they were entitled to receive a vacancy lease with riders as required by the RSL upon initially signing the lease on January 4, 2012. To bolster this contention, respondents annex a Division of Housing and Community Renewal (DHCR) annual filing registration (exhibit F)[3] and DHCR initial filing registration (exhibit H). Both documents were filed by, or on behalf of the petitioner, and both documents state that the apartment was subject to rent regulation on January 4, 2012 (the date the initial lease was signed).
Respondents also annex documents which they claim are “Billing Statements and Property Tax Information” (exhibit G). Even if this court were to determine that a proper evidentiary foundation was established for admission of these documents, respondents merely use them to demonstrate that they “indicate that [petitioner] began to receive 421-a tax benefits [sic] on July 1, 2012” (respondents’ affirmation ¶ 9).[4]
Respondents contend that because the apartment was subject to the RSL at the signing of the original lease, petitioner engaged in deceptive business practices in violation of General Business Law § 349, as: (1) the respondents were consumers; (2) petitioner materially misled respondents by: failing to disclose the premises’ true regulatory status and the benefits that flow therewith; using contradictory language in the lease; negotiating a free market lease; and collecting in excess of one *323 month’s rent “up front” (respondents’ affirmation ¶ 20); which (3) injured respondents by preventing them from “exercising their legal rights, filing a free [sic] market rent appeal, increasing bargaining power during lease negotiations, and causing them to sign a contract without informed consent” (respondents’ affirmation ¶ 26). As a result, respondents argue that the petitioner’s motion must be denied and respondents’ cross motion granted.
Third Affirmative Defense and Counterclaim
Allegation(s)
Respondents’ third affirmative defense and counterclaim alleges that petitioner overcharged respondents, in violation of RSC §§ 2526.1 and 2526.4, by collecting in excess of one month’s rent from the respondents in consideration of renting the premises to respondents.
Petitioner’s Arguments
Third Affirmative Defense and Counterclaim
Petitioner urges that respondents’ third affirmative defense and counterclaim must be stricken, since at the time this excess amount was collected, the apartment was not subject to rent regulation. Petitioner also states that the excess amount collected ($5,800) has been refunded to respondents by petitioner applying that amount to respondents’ rental arrears (see petitioner’s affirmation in support of motion ¶ 14; aff ¶ 15)— allegations not rebutted by respondents.
Additionally, petitioner argues that RSC § 2526.1 (a) (1) is limited to rent charged and collected by the landlord in excess of the lawful rent and does not apply to security deposits or advance payment. Therefore, according to petitioner, respondents’ third affirmative defense and counterclaim must be stricken and the cross motion must be denied.
Respondents’ Opposition and Cross Motion
Third Affirmative Defense and Counterclaim
Respondents contend that since the apartment was indeed subject to the RSL at the time of the signing of the initial lease, any security or other sums required and accepted by the petitioner in excess of one month’s rent is an overcharge in violation of RSC § 2526.1. Respondents urge that this court should not adopt petitioner’s narrow interpretation that RSC § 2526.1 only applies to overcharges of monthly rent and not excess security or other amounts demanded by a landlord from a tenant. As a result, respondents argue that the petitioner’s motion must be denied and respondents’ cross motion granted.
*324 Fourth Affirmative Defense and Counterclaim
Allegation(s)
Respondents’ fourth affirmative defense and counterclaim alleges a rent overcharge in violation of RSC § 2522.5 (c) (3) (d) in that “petitioner unlawfully adjusted the rent during the lease term from $2,850 to $2,900 from February 2013 to present” (answer ¶ 20).
Petitioner’s Arguments
Fourth Affirmative Defense and Counterclaim
Petitioner argues that respondents’ fourth affirmative defense and counterclaim must be stricken because the RSC regulates future rent-stabilized increases. Petitioner urges that in the case at bar, since the mid-term escalation clause was proper at the time the vacancy lease was signed, because the premises were a free market rental, there exists no defense or counterclaim based upon a mid-term escalation (see affirmation in support of motion ¶¶ 17-18). Therefore, according to petitioner, respondents’ fourth affirmative defense and counterclaim must be stricken, and the cross motion denied.
Respondents’ Opposition and Cross Motion
Fourth Affirmative Defense and Counterclaim
Respondents argue that because the premises were subject to the RSL at the inception of the tenancy, and the RSL mandates that petitioner offer a one- or two-year lease at the tenants’ option, petitioner’s failure to do so is contrary to law. As a result, respondents argue that the petitioner’s motion must be denied and respondents’ cross motion granted.
Fifth Counterclaim
Allegation(s)
Respondents’ fifth counterclaim alleges harassment, in that petitioner threatened to commence legal proceedings against respondents to exhaust respondents’ resources and ruin respondents’ chances of obtaining alternate housing and encouraging respondents to vacate the premises.
Petitioner’s Arguments
Fifth Counterclaim
Petitioner urges that respondents’ fifth counterclaim, alleging harassment, must be stricken because it is not inextricably intertwined with petitioner’s nonpayment proceeding (see affirmation in support of motion ¶¶ 17-18). Therefore, according to petitioner, respondents’ fifth counterclaim must be stricken.
*325 Respondents’ Opposition and Cross Motion
Fifth Counterclaim
Respondents argue that this is the third proceeding petitioner commenced against respondents within a year, which constitutes both frivolous conduct and harassment, and that the defense is inextricably intertwined with the instant proceeding.
Respondents’ Additional Argument That Summary Judgment in Their Favor is Warranted
Respondents also contend that petitioner’s motion is frivolous, in violation of Rules of the Chief Administrator of the Courts (22 NYCRR) § 130-1.la, because, contrary to the allegations in the affirmation and affidavit in support of the petitioner’s motion, the apartment was clearly subject to rent stabilization from the commencement of the lease and any statement to the contrary is pure frivolity (respondents’ affirmation ¶¶ 27-29).
Reply and Further Opposition
The reply and further opposition cite previously relied on law and allege facts that were previously asserted. Additionally, respondents’ response is again unsworn and un-notarized, and it is dated February 17, 2013, months prior to the commencement of the instant proceeding.
Discussion
Effective Date of Applicability of RSL
To determine whether certain challenged defenses and counterclaims should be stricken, or if summary judgment in respondents’ favor is warranted, this court must determine if, as petitioner asserts, the premises became subject to the RSL on July 1, 2012, the effective date of the RPTL 421-a tax concession, or as asserted by respondents, on the date that the lease was executed, on January 4, 2012.
“Section 421-a of the [RPTL] provides for an exemption from local taxation for certain new[ly] [constructed] multiple dwellings” (Matter of Kew Gardens Dev. Corp. v Wambua, 103 AD3d 576, 577 [1st Dept 2013]). In return for the tax exemption, landlords are required to submit the units for which they receive the exemption to the RSL for the duration of the tax benefit period, even if the building would otherwise be exempt from rent regulation.[5]
Neither side submitted persuasive support for their contradictory positions as to the exact date the premises became subject *326 to rent regulation, and “[t]his court’s review of [the applicable law] has not produced any conclusive result on the narrow issue before it.”[6]
Cases found by this court, addressing the issue of the date for which buildings that receive tax benefits become subject to rent stabilization, have interpreted RPTL 489[7] and not RPTL 421-a.[8] These cases have held that “for at least so long as a building is receiving the benefits of the Act, ... all dwelling units in [such] buildings . . . shall be subject to rent regulation”[9] and “all apartments in buildings receiving . . . tax benefits are subject to the RSL during the entire period in which the owner receives such benefits.”[10]
Additionally, “[r]ental units in buildings receiving these exemptions and/or abatements . . . are . . . subject to rent stabilization . . . [and it is upon] receiving the benefits [that] the building bec[omes] subject to the RSL.”[11]
The purpose of RPTL 489 is to encourage rehabilitation and improvements in multiple dwellings within New York City.[12] Similarly, the purpose of the “tax exemption program enacted by [RPTL 421-a] . . . [is] to encourage the development of housing in New York City on ‘under-utilized land.’ ”[13] Based upon the foregoing, it is clear that the purpose of both programs is the same: to encourage investment in residential housing.
*327 Accordingly, this court finds that just as apartments become subject to rent regulation as of the date they receive the tax (J-51) benefit, similarly, apartments receiving RPTL 421-a tax benefits also become subject to rent regulation as of the date they receive the tax benefit. Therefore, this court concludes that it was upon the effective date of the benefit (July 1, 2012) that the premises became subject to rent regulation, not at the time the lease for the premises was signed.
Moreover, it is worth noting that a landlord does not receive the tax credit immediately upon completion of the new building, or the initial rental of an apartment in the building. The “plain and unambiguous language ... [of RPTL 421-a (2)] provides that tax exemptions will not begin until the first day of the tax year following the taxable status date . . . that occurs subsequent to the commencement and prior to the completion of construction.”[14] “[T]ax exemption statutes should be strictly construed.”[15] Additionally, an owner’s construction of a new building is not an automatic grant of a tax exemption; an application for an RPTL 421-a tax abatement must be approved.[16]
Estoppel
Respondents’ assertion that documents filed by or on behalf of petitioner, with the DHCR, stating that the premises were subject to rent regulation at the time of the signing of the lease (Jan. 4, 2012) are to be used to establish that a rent regulated tenancy existed on the date the lease was signed[17] is contrary to law, as “coverage under a rent regulatory scheme is governed by statute and cannot be created by waiver or equitable estoppel” (Gregory v Colonial DPC Corp. Ill, 234 AD2d 419, 419 [2d Dept 1996]).
General Business Law Violation
Respondents’ allegation that the petitioner violated General Business Law § 349, by failing to disclose that the apartment was rent regulated at the initial signing of the lease, is *328 improperly raised in this proceeding, as a violation of this law does not give rise to an independent private cause of action.[18]
Improper Lease Escalation/Renewal
The determination of whether the initial lease offered by petitioner was improper because it provided for a mid-term escalation of rent depends upon the date the apartment became subject to rent regulation.[19]
Overcharge
The issue of petitioner overcharging respondents, by collecting in excess of one month’s rent at the commencement of the tenancy, was addressed in a previous nonpayment proceeding between the parties (Kings County L&T 52947/13). In that proceeding, by a decision dated August 26, 2013, Judge Jean Schneider wrote,
“the DHCR has consistently] interpreted its own regulation to deny treble damages for a charge of excess security. However, the respondents’ lease says that only one month[’s] rent is charged as security, so there is an open question of fact about whether the excess charge is security or something else.”
Accordingly, the rent overcharge issue is not ripe for summary determination.
*329 Harassment
Respondents’ counterclaim for harassment seeks “compensatory” damages for “respondents’ mental anguish and emotional distress” as well as “punitive damages.”[20] As the complained of conditions, even if submitted in proper evidentiary form,[21] have been held to be not inextricably “intertwine[d] with the petitioner’s . . . action for rent,”[22] respondents’ counterclaim for harassment is dismissed.
Allegation of Petitioner’s Frivolous Conduct
Respondents’ contention that petitioner’s motion is frivolous because it is in violation of Rules of the Chief Administrator (22 NYCRR) § 130-1. 1a[23] is without merit. While respondents correctly assert that petitioner’s motion fails to allege that it is not frivolous, in compliance with said rule, this court notes that respondents also failed to submit a statement in their cross motion or opposition in compliance with said rule.
Final Determination
Based upon the foregoing, that portion of petitioner’s motion seeking to strike respondents’ second and fourth affirmative defenses and counterclaims and fifth counterclaim is granted; and that portion of petitioner’s motion seeking to strike respondents’ third defense and counterclaim is denied; and respondents’ cross motion is denied.
Restoration
This matter shall appear on the court calendar on May 30, 2014, Part H, room 507 at 9:30 a.m.
If the matter cannot be settled at that time and place, the case shall be sent to the expediter to be transferred to a trial *330 part for a determination on the issues not resolved by the instant decision.

. The “421-a tax abatement” refers to Real Property Tax Law § 421-a et seq.

. In support of their cross motion for partial summary judgment, respondents submit an “affidavit” which appears to have been signed before a notary public on January 6, 2014. The court notes that this “affidavit” is neither sworn to nor affirmed under penalties of perjury. Additionally, respondents submit a document titled “AFFIRMATION IN SUPPORT FOR [sic] CROSS-MOTION.” This document is also dated January 6, 2014 and has signatures above the lines, where each respondent’s printed name appears. This document also fails to allege that the allegations stated therein are true under penalties of perjury, and it is not notarized. Accordingly, the “affidavit,” “AFFIRMATION” and the annexations thereto are of limited probative value. However, since most of the facts are not disputed, and the “AFFIRMATION” submitted by the respondents contains numerous legal, rather than factual arguments, this court will consider the submissions, and weigh them according to their probative value.

. As this same document is annexed to petitioner’s moving papers (at exhibit F) and to petitioner’s reply papers (at exhibit E) this court will deem the document in proper evidentiary form.

. This is not a disputed fact.

. RPTL 421-a (2) (f); Finkelstein & Ferrara, Landlord and Tenant Practice in New York § 11:81 (2013).

. Matter of East Riv. Realty Co., LLC v New York State Dept. of Envtl. Conservation, 22 Misc 3d 404, 417 (Sup Ct, NY County 2008).

. This tax benefit is commonly referred to as “J-51” which applies to rehabilitated and improved buildings (see Administrative Code of City of NY § 11-243 [previously § J51-2.5]).
“New York City has developed a program for multiple dwellings offering tax incentives for landlords who rehabilitate or improve their property. (Administrative Code of City of NY § 11-243.) The City has established the so called J-51 program which grants tax relief to owners who make specified improvements to their properties” (Ade v Riverview Redevelopment Co., LP, 26 Misc 3d 1102, 1105-1106 [Sup Ct, Bronx County 2010]).

. RPTL 421-a applies to newly constructed buildings.

. Denza v Independence Plaza Assoc., LLC, 95 AD3d 153, 157 (1st Dept 2012).

. Matter of 73 Warren St., LLC v State of N.Y. Div. of Hous. & Community Renewal, 96 AD3d 524, 528 (1st Dept 2012).

. Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 280, 284-285 (2009).

. Denza v Independence Plaza Assoc., LLC, 17 Misc 3d 1122(A), 2007 NY Slip Op 52106(U) (Sup Ct, NY County 2007); Roberts v Tishman Speyer Props., L.P., 13 NY3d 270 (2009).

. Matter of East Riv. Realty Co., LLC v New York State Dept. of Envtl. Conservation, 22 Misc 3d 404, 417 (Sup Ct, NY County 2008).

. Honto 88 Assoc. v City of New York, 182 AD2d 403, 403 (1st Dept 1992).

. Matter of 108 Realty LLC v Department of Hous. Presero. & Dev. of the City of N.Y., 83 AD3d 556, 558 (1st Dept 2011).

. See Matter of Kew Gardens Dev. Corp. v Wambua (103 AD3d 576 [1st Dept 2013]), where the Court held that the Department of Housing Preservation and Development rationally denied an owner’s RPTL 421-a tax exemption application because the premises failed to meet all the criteria as required by the statute.

. See respondents’ affirmation ¶¶ 8, 10.

. The “cause of action, alleging violation of . . . General Business Law ... § 349, is also dismissed because private landlord-tenant disputes such as this one do not fall within the ambit of [General Business Law] § 349 as a matter of law” (Nezry v Haven Ave. Owner LLC, 28 Misc 3d 1226[A], 2010 NY Slip Op 51506[U], *10 [Sup Ct, NY County 2010]). Indeed,
“[b]ecause [the law] does not explicitly provide for a private cause of action, recovery may be had under the statute only if [the] legislature] inten[ded] to create such a right of action .... [Here,] plaintiff does not have [a] . . . private cause of action . . . for a violation of section 220-d” (Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207, 211, 213-214 [1990]).

. Paragraph 22 of the affidavit in support of the cross motion states: “[a] renewal lease, attached as Exhibit X was provided. The ‘legal regulated rent’ for a 1 year lease $3,243.60 and $3,307.20 for 2 year [sic]. The ‘preferential rent’ is offered at $2,958 for a 1 year lease and $3,016 for a 2 year lease.” The court notes that this allegation (or potential defense) is not asserted in respondents’ answer and the cross motion annexes exhibits A through L; there was no exhibit X attached. Additionally, neither petitioner nor respondents substantively addressed this issue. Accordingly, the issue of whether a proper lease renewal was offered upon expiration of the initial lease will not be addressed in this decision.

. See answer at “wherefore” clause ¶ 5a-c.

. See Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc., 115 AD3d 128, 142 (1st Dept 2014) (“the unsworn documents proffered by [respondent] have no probative value given the absence of such an evidentiary foundation”); see also Bogal v Finger, 59 AD3d 653 (2d Dept 2009).

. “Respondents’ counterclaim for harassment is dismissed without prejudice since it is not a proper counterclaim in this summary proceeding in that it does not relate to or intertwine with petitioner’s simple action for rent” (Severin v Rouse, 134 Misc 2d 940, 948 [Civ Ct, NY County 1987]).

. This rule requires that every submission to the court be signed by the attorney (or party, if the party is self-represented), with the name of the attorney (or the self-represented litigant) clearly printed or typed directly below the signature. The rule states that the signature certifies that the submission presented to the court is not frivolous.