[941 NYS2d 130]

JOHN R. DENZA et al., Respondents, v INDEPENDENCE PLAZA ASSOCIATES, LLC, et al., Appellants.

INDEPENDENCE PLAZA NORTH TENANTS' ASSOCIATION et al., Respondents, v INDEPENDENCE PLAZA ASSOCIATES, L.P., et al., Appellants.

INDEPENDENCE PLAZA NORTH TENANTS' ASSOCIATION et al., Appellants, et al., Plaintiff, v INDEPENDENCE PLAZA ASSOCIATES., L.P., et al., Respondents.

First Department, April 3, 2012

154

**APPEARANCES OF COUNSEL**

*Meister Seelig & Fein LLP*, New York City (*Stephen B. Meister, Stacy M. Ashby* and *Remy J. Stocks* of counsel), for Independence Plaza Associates, LLC, WB/Stellar IP Owner, L.L.C., and Independence Plaza Associates, L.P., appellants/respondents.

*Collins, Dobkin & Miller, LLP*, New York City (*Seth A. Miller* of counsel), for John R. Denza, Susan Greenberg, Brett Macune, Andrew Parsons, Robert P. Rice, Christophe Rihet, and Nadav Zeimer, respondents, and for Independence Plaza North Tenants' Association, Pamela Beaulieu, Anna Braudes, James Berend, Eric Berend, Carolyn Dicarlo Anastasia Dilieto, Theresa, Lopez, Adam Macagna, Kathleen McGovern, Koluska Poventud, Catherine Procopio, Edmund Rosner, Elizabeth Saenger, Sally Etta Sheinfeld, Philip Stein, Gertrude Stein, Linda Stein, Adrian Vanderplas, Steve Vorillas and Mildred Zeldis, respondents/appellants and Felix Ortiz, respondent.

*Belkin Burden Wenig & Goldman, LLP*, New York City (*Magda L. Cruz, Sherwin Belkin* and *Martin J. Heistein* of counsel), for amici curiae.

## OPINION OF THE COURT

SAXE, J.

These appeals present the question of whether the continued receipt of J-51 tax benefits by the owner of a housing complex, following the owner's withdrawal of the complex from the Mitchell-Lama program, triggers the applicability of the Rent Stabilization Law even if those benefits were determined to have been unauthorized from the moment of the withdrawal, and were retroactively repaid.

Independence Plaza North (IPN) is a residential housing development constructed in 1974 under the Mitchell-Lama program (Private Housing Finance Law art II), which grants incentives such as low-interest mortgage loans and real estate tax exemptions to landlords who develop low- and middle-income housing, when the landlords agree to regulation of rents and profits. As a development subject to the Private Housing Finance Law, IPN was also entitled to receive tax abatements from the City of New York, commonly called J-51 benefits, for major renovations (*see* Administrative Code of City of NY § 11-243 [d] [2] [ii]; [i] [1]; 28 RCNY 5-03 [f] [1] [iii]). In 1998, IPN received a J-51 tax abatement amounting to $7,550 per year for 12 years, for making $90,600 worth of major capital improvements.

Owners of projects constructed after May 1, 1959 are entitled to withdraw from the Mitchell-Lama program after 20 years by paying the remaining balance of a property's mortgage (*see* Private Housing Finance Law § 35 [2]). On or about June 26, 2003, the New York City Department of Housing Preservation and Development (HPD) and IPN's tenants were notified of the owner's intent to exit the Mitchell-Lama program. On March 12, 2004, before its formal withdrawal from Mitchell-Lama, the owner, Independence Plaza Associates, L.P., entered into an agreement with the tenants' association, plaintiff Independence Plaza North Tenants' Association, Inc. Under that agreement, the tenants' association agreed to try to cause every tenant to apply for a so-called "enhanced voucher" under Section 8 of the United States Housing Act of 1937 (42 USC § 1437f [a]), which would provide eligible low-income families with extra housing assistance to subsidize any market-based rent increase follow-

ing the development's withdrawal from Mitchell-Lama. The owner agreed that those tenants who were granted such assistance would be awarded leases at the rental value determined by HPD, so that the amount they themselves were required to pay would remain the same; those tenants who were denied such assistance would "receive the benefits of the Landlord Assistance Program," meaning that their rents would increase in accordance with New York City Rent Guidelines Board (RGB) increases for the first nine years after IPN withdrew from Mitchell-Lama, for the 10th-12th years, their rents would increase by the RGB increases plus 3.33%, and for every year thereafter, their rents would increase by the RGB increase plus 1%. In addition, those tenants' families would be granted succession rights.

In a letter dated and delivered on June 28, 2004, IPN formally notified the New York City Department of Finance (DOF) of its withdrawal as of that date from Mitchell-Lama and that consequently "the Property shall forthwith be restored to a full taxpaying position" effective as of that date. However, no action was taken by DOF to terminate IPN's J-51 benefits, and these benefits continued until March 23, 2006, when, following consideration prompted by IPN's inquiries, HPD informed DOF that IPN's J-51 benefits should have been terminated as of June 28, 2004. On April 3, 2006, IPN repaid all J-51 benefits it received after June 28, 2004, plus interest.

On September 28, 2004, after IPN formally withdrew from Mitchell-Lama, the tenants' association and 20 tenants who had been denied enhanced Section 8 vouchers brought the action captioned *Independence Plaza N. Tenants' Assn. v Independence Plaza Assoc., L.P.*, initially seeking leases in accordance with the March 12, 2004 agreement. In the fall of 2007 they amended their complaint to add a cause of action seeking a declaration that their apartments were rent-stabilized.

In December 2005, the *Denza v Independence Plaza Assoc., LLC* action was commenced by tenants who entered into market-rate leases at IPN after it withdrew from Mitchell-Lama. These tenants claimed that IPN's postexit receipt of J-51 benefits rendered their apartments rent stabilized, and sought single damages, treble damages, attorneys' fees, lease reformation, and a declaratory judgment.

In April 2009, the court in both actions remanded to the New York State Division of Housing and Community Renewal

(DHCR) the issue of IPN's status under the Rent Stabilization Law. The opinion issued by DHCR concluded that IPN was not subject to the Rent Stabilization Law, reasoning:

> "In view of the fact that HPD terminated the J-51 tax abatement effective as of the dissolution date . . . , the complex was not effectively receiving benefits subsequent to leaving Mitchell Lama regulation and, therefore, [Rent Stabilization Law] 26-504c [*sic*] would not be applicable . . . Since IPN did not become subject to rent stabilization in the first place, 28 RCNY (5-03 (f) (3) [*sic*], the provision of HPD's J-51 regulation that mandates continued rent regulation when J-51 benefits are revoked or waived would accordingly not be applicable to this matter, since according to HPD the benefits never attached after dissolution."

The parties then moved for summary judgment on their respective claims regarding whether the IPN apartments became rent stabilized on June 28, 2004, based on the owner's continued receipt of J-51 benefits.

In the order now on appeal, the motion court, disagreeing with DHCR's reasoning, granted plaintiffs' motions for summary judgment to the extent of holding that as a result of IPN's continued receipt of J-51 benefits, the IPN tenants' apartments became subject to the Rent Stabilization Law upon IPN's withdrawal from the Mitchell-Lama program. It decreed "that each plaintiff's apartment is subject to the Rent Stabilization Law and shall remain subject until the vacancy of that apartment by the tenant of that apartment." (*Independence Plaza N. Tenants' Assn. v Independence Plaza Assoc., L.P.*, 29 Misc 3d 868, 886 [2010].)

The motion court reached its determination by applying two provisions of the Rules of the City of New York title 28, chapter 5, which is headed "J51 Tax Exemption and Tax Abatement," and two provisions of Rent Stabilization Law (Administrative Code) § 26-504. It first looked to 28 RCNY 5-03 (f) (1), which provides that "to be eligible to receive [J-51] benefits . . . [,] and for at least so long as a building is receiving the benefits of the Act, . . . all dwelling units in [such] buildings . . . shall be subject to rent regulation." It then considered 28 RCNY 5-07 (f)

(3), which at the relevant time[1] provided that if a building ceased to be subject to rent regulation, the Commissioner "shall withdraw" J-51 benefits. The court emphasized that section 5-07 (f) (3) does *not* require termination of J-51 benefits by operation of law whenever a building exited the Mitchell-Lama program; it only required termination of J-51 benefits when the building was, at that point, no longer subject to *any type of* rent regulation.

The court then reasoned that these regulations must be read in light of two provisions of Rent Stabilization Law (Administrative Code) § 26-504: first, subdivision (a) (1) (b), which exempts from rent stabilization coverage dwelling units in a building subject to regulation under the Private Housing Finance Law, such as a Mitchell-Lama building; second, and most importantly, subdivision (c), which provides that the Rent Stabilization Law shall apply to dwelling units in a building receiving J-51 benefits, as long as that building is not owned as a cooperative or a condominium and is not subject to rent control. It concluded that, "[r]ead together, these sections extend rent stabilization coverage to units in buildings based on receipt of J-51 benefits if, but only if, the building is no longer rent regulated under the Private Housing Finance Law." (29 Misc 3d at 877.)

In further support of its conclusion, the motion court pointed out that even HPD did not interpret its own rules regarding J-51 tax abatements (28 RCNY ch 5) as requiring the automatic termination of J-51 benefits under such circumstances; rather, HPD considered itself to have the discretionary authority to order such a termination of benefits after review of the facts and the equitable and policy considerations. The court also noted that HPD's Commissioner had testified before Congress that nearly three-quarters of the units at Starrett City receive a J-51 tax exemption "which makes them subject to rent stabilization at [Mitchell-Lama] buy-out." (*Id.* at 880.) Additionally, the court observed, although DHCR had ruled that IPN's units were not rent stabilized after IPN's withdrawal from Mitchell-Lama, the agency *agreed* with the proposition that "if the complex received J-51 benefits for the period after it exited the Mitchell Lama program, . . . the development *is* subject to rent stabilization" (*id.* at 878 [emphasis added]). The court observed that DHCR merely believed it was constrained by HPD's retroactive determination that as soon as IPN withdrew from Mitchell-Lama, it

---

1. That provision was since eliminated by amendments announced in the City Record on March 16, 2010, effective April 15, 2010.

was no longer entitled to receive J-51 benefits, and the resulting legal fiction that by virtue of IPN's subsequent repayment of those benefits, IPN should be treated as if it had not received such benefits in the first place.

Finally, the motion court suggested that since HPD's retroactive termination of IPN's J-51 benefits was "at defendants' instance," IPN had in effect voluntarily waived those benefits. (*Id.* at 881.) It then looked to 28 RCNY 5-03 (f) (3) (ii), which provides that "rent regulation shall not be terminated by the waiver or revocation of tax benefits," to hold that HPD's termination of IPN's J-51 benefits could not terminate the rent stabilization coverage of the units.

For the reasons that follow, we reverse.

■ Initially, we reject defendants' contention that this claim is time-barred. We also reject defendants' contention that the motion court was required to defer to DHCR's determination that IPN was not rent stabilized; we particularly observe that DHCR was not interpreting its own regulations (*see generally Matter of Kilgus v Board of Estimate of City of N.Y.*, 308 NY 620, 625-628 [1955]; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 285 [2009]). Nor do we accept the suggestion that we are otherwise barred from considering the issue on the merits.

In addressing the merits, we must acknowledge at the outset that the same issue was recently presented to the United States District Court for the Southern District of New York, in the context of a qui tam complaint brought by an IPN tenant on behalf of the United States against IPN and the owners of another similarly situated housing development. The federal government sought reimbursement for the enhanced Section 8 subsidies it paid to IPN and the other development, representing increases in the rent of low-income tenants to fair market rates after these developments were withdrawn from Mitchell-Lama (*United States v WB/Stellar IP Owner LLC*, 800 F Supp 2d 496 [SD NY 2011]). As here, the parties in that matter moved for summary judgment, one side arguing that the receipt of J-51 tax benefits after the buildings were withdrawn from Mitchell-Lama subjected the buildings to rent regulation under the Rent Stabilization Law, the other contending that the owner's J-51 tax benefits necessarily terminated as a matter of law upon its withdrawal from Mitchell-Lama, so that at that point no rent regulation applied.

■ We concur with Judge Scheindlin's reasoning in the federal matter, granting summary judgment to the owners. We

hold that IPN's continued receipt of J-51 benefits after it exited the Mitchell-Lama program was merely the erroneous result of DOF's failure to adjust IPN's tax liability following its receipt of notice that the property would be restored to full taxpaying status as of June 28, 2004. That error did not create rent stabilized status for a development that was not otherwise subject to the Rent Stabilization Law.

It is true that the receipt of J-51 benefits may trigger the applicability of Rent Stabilization Law (Administrative Code) § 26-504 (c), which provides that the Rent Stabilization Law shall apply to dwelling units in a building receiving J-51 benefits, as long as that building is not owned as a cooperative or a condominium and is not subject to rent control. Had IPN intentionally sought and obtained J-51 benefits when no other rent regulation applied to its units, its receipt of those benefits would have triggered rent stabilization. But IPN sought and obtained J-51 benefits while it was subject to the Private Housing Finance Law, so the Rent Stabilization Law did not become applicable to it by virtue of those payments.

The question is whether continued receipt of those benefits after IPN's exit from the Mitchell-Lama program, which occurred because DOF took no action to restore IPN to full taxpaying status as of June 28, 2004, caused rent stabilization protection to spring into existence the moment the protection of the Private Housing Finance Law ceased.

At the time of IPN's withdrawal from the Mitchell-Lama program on June 28, 2004, the HPD rule then in effect, 28 RCNY 5-07 (f) (3),[2] provided that if a building ceased to be subject to rent regulation, the Commissioner "shall withdraw" J-51 benefits. That exact situation was presented here: IPN ceased to be subject to the only rent regulations covering it, namely, the Private Housing Finance Law, and at that moment the City was required to stop allowing it J-51 benefits.

Plaintiffs nevertheless contend that, notwithstanding the mandatory language of the then-applicable rule, withdrawal of

---

**2.** Although that provision was eliminated by an amendment effective April 15, 2010, at the time of these events it was still in effect. Moreover, despite the comment in HPD's statement of basis and purpose, that "[t]hese rule amendments are not intended to make any substantive changes in the eligibility requirements for these tax benefit programs nor in the continuing obligations such programs impose on taxpayers upon the revocation or termination of their tax benefits," we consider the deletion of 28 RCNY 5-07 (f) a substantive change, and therefore will not permit plaintiffs to rely on this amendment, which became effective almost six years after the events in question (see *Matter of Peckham v Calogero*, 12 NY3d 424, 432 [2009]).

J-51 benefits was not actually mandatory, but was discretionary, as HPD indicated in its opinion on this matter.

We find nothing in the mandatory language of the rule as it then stood that may be read to give the agency discretion as to whether an owner's J-51 benefits could survive the building's withdrawal from Mitchell-Lama, where no other rent regulation was ever applicable. In contrast, the preceding subdivision, 28 RCNY 5-07 (e), denominated "Revocation or reduction of tax exemption and tax abatement for failure to substantiate claimed costs," expressly gives HPD discretion in other types of circumstances.

IPN became ineligible to continue receiving J-51 benefits, as a matter of law, at the moment it exited Mitchell-Lama (*see* Administrative Code § 11-243 [i] [1]; 28 RCNY 5-03 [f] [1]; former 28 RCNY 5-07 [f] [3]; *Stellar*, 800 F Supp 2d at 511). Nor does 28 RCNY 5-03 (f) (3) (ii) operate here to provide the tenants with rent-stabilized status, because that rule prohibits the termination of rent regulation by revocation or waiver of J-51 benefits, and here it was defendants' withdrawal from the Mitchell-Lama program that terminated rent regulation, not the revocation or waiver of their J-51 benefits (*see id.* at 511 n 122). An entity cannot waive that which it is not entitled to receive.

The erroneous continuation of the tax benefits after Mitchell-Lama coverage ended, which were refunded in full, with interest, did not cause the buildings to take on a new form of rent regulation. We must therefore reverse the grant of judgment to plaintiffs and the legal conclusion that, as a result of its continued receipt of J-51 benefits, IPN became subject to the Rent Stabilization Law upon its withdrawal from Mitchell-Lama.

Lastly, the court's order in *Independence Plaza N. Tenants' Assn.* denying defendants' motion to remand to DHCR the first through sixth causes of action, which seek enforcement of rights under the parties' March 12, 2004 agreement, was correct. As the court recognized, nothing raised therein is subject to DHCR review, because those causes of action seek relief under the parties' agreement rather than under the Rent Stabilization Law. In fact, in view of the remainder of our determination, those issues may now require litigation.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Marcy S. Friedman, J.), entered September 2, 2010, which, insofar as appealed from,

granted plaintiffs' motions for summary judgment in both of these actions consolidated for appeal and denied defendants' motion for summary judgment dismissing the first action (*Denza*), should be reversed, on the law, without costs, plaintiffs' motions denied, defendants' motion granted, and the complaint in *Denza* dismissed. The Clerk is directed to enter judgment accordingly. The order of the same court and Justice, entered December 17, 2010, which, to the extent appealed from as limited by the briefs, denied defendants' motion to remand the first through sixth causes of action to nonparty New York State Division of Housing and Community Renewal, should be affirmed, without costs.

DEGRASSE, J. (dissenting in part). I respectfully dissent because plaintiffs' appeal in the action entitled *Independence Plaza N. Tenants' Assn. v Independence Plaza Assoc., L.P.* should be dismissed. The appeal is from the order that denied defendants' motion for an order remanding the first through sixth causes of action to the New York State Division of Housing and Community Renewal. Plaintiffs submitted answering papers requesting that the motion be denied in its entirety. The appeal should be dismissed because plaintiffs are not aggrieved by the denial of the remand they opposed.

CPLR 5511 provides that "[a]n aggrieved party . . . may appeal from any appealable judgment or order except one entered upon the default of the aggrieved party." "Generally, the party who has successfully obtained a judgment or order in his favor is not aggrieved by it, and, consequently, has no need and, in fact, no right to appeal" (*Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 544 [1983]). Although the remand that defendants requested was denied, plaintiffs have taken this appeal because in dictating its decision on the record the court commented that "there is nothing to remand." In light of the fact that plaintiffs' claims are still pending, there is no merit to their argument that the court thereby "effectively dismissed" their causes of action. There are no grounds for appeal where the successful party has obtained the full relief sought, "even where that party disagrees with the particular findings, rationale or the opinion supporting the judgment or order below in his favor" (*id.* at 545). This aspect of the appeal is based entirely on such a disagreement. Accordingly, I would dismiss plaintiffs' appeal from the December 17, 2010 order. I agree with the majority's conclusions in all other respects.

MAZZARELLI, J.P., and ROMÁN, JJ., concur with SAXE, J.; DE-GRASSE, J., dissents in part in a separate opinion.