11-3302-cv(L)
*United States v. Glenn Gardens Assocs., L.P., et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21ˢᵗ day of August, two thousand thirteen.

PRESENT:

> JOSÉ A. CABRANES,
> RICHARD C. WESLEY,
> J. CLIFFORD WALLACE,[*]
> > *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

       *Plaintiff-Appellant,*

       -v.-                                Nos. 11-3302-cv(L),
                                              11-3315-cv(CON)

GLENN GARDENS ASSOCIATES, L.P., WB/STELLAR IP OWNER, L.L.C., INDEPENDENCE PLAZA ASSOCIATES, L.L.C., INDEPENDENCE PLAZA, L.P., STELLAR MANAGEMENT, LAURENCE GLUCK, and CITY OF NEW YORK,

       *Defendants-Appellees.*[†]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

[*] The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

[†] The Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

**FOR PLAINTIFF-APPELLANT:** JEFFREY S. OESTERICHER, Assistant United States Attorney (Sarah S. Normand, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney, United States Attorney's Office for the Southern District of New York, New York, NY.

**FOR DEFENDANTS-APPELLEES W/B STELLAR IP OWNER, L.L.C, INDEPENDENCE PLAZA ASSOCIATES, L.L.C., INDEPENDENCE PLAZA, L.P., AND LAURENCE GLUCK:** STEPHEN B. MEISTER (Stacey M. Ashby, *on the brief*), Meister Seelig & Fein LLP, New York, NY.

**FOR DEFENDANT-APPELLEE GLENN GARDENS:** PETER C. NEGER (Gillian I. Biron, *on the brief*), Bingham McCutchen LLP, New York, NY.

Appeal from the May 12, 2011 amended judgment of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the May 12, 2011 judgment of the District Court be **AFFIRMED**.

Plaintiff the United States of America appeals from an order of the District Court granting summary judgment to the defendants, who are owners of two large rental apartment buildings in Manhattan, Glenn Gardens and Independence Plaza North ("IPN").[1] The United States seeks principally to recover federal housing assistance payments which were made to offset rent increases at Glenn Gardens and IPN that the United States now claims were illegal. We review an order granting summary judgment *de novo* and "resolv[e] all ambiguities and draw[] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)). We assume familiarity with the underlying facts and procedural history of this case.

---

[1] For ease of comprehension, we refer to the various defendants by the buildings they own—i.e., as either "Glenn Gardens" or "IPN."

BACKGROUND

Both Glenn Gardens and IPN were built in the mid-1970's under what is commonly known as the Mitchell-Lama Housing Program ("Mitchell-Lama") and less commonly known as Article II of New York's Private Housing Finance Law ("PHFL"). Mitchell-Lama promoted construction of so-called affordable housing by providing long-term, low-interest government mortgage loans to developers on the condition that the resulting development be subject to rent regulation. An owner of such a building may opt out of Mitchell-Lama—and its rent regulation requirement—after twenty years by paying off the mortgage.

In the late 1990s, both Glenn Gardens and IPN began receiving tax benefits under New York City's "J-51" program. Under that program, property owners may receive multi-year tax exemptions or abatements for completing certain major building improvement projects. *See* N.Y.C. Admin. Code § 11-243. In order for a rental building like Glenn Gardens or IPN to be eligible for J-51 benefits, it must either be or become subject to rent regulation. *See* 28 Rules of New York City ("RCNY") § 5-03(f)(1). Specifically, the building must be subject to rent regulation pursuant to (1) New York City's Rent and Rehabilitation Law, N.Y.C. Admin. Code § 26-401, *et seq.*; (2) New York City's Rent Stabilization Law of 1969 ("RSL"), *id.* § 26-501, *et seq.*; (3) the PHFL; (4) "any federal law providing for rent supervision or regulation by [the U.S. Department of Housing and Urban Development ("HUD")] or any other federal agency"; or (5) the Emergency Tenant Protection Act of 1974. 28 RCNY § 5-03(f)(1).[2] Glenn Gardens and IPN qualified for J-51 benefits because they were, at that time, in Mitchell-Lama and therefore subject to rent regulation under the PHFL.

On June 27, 2003, and June 28, 2004, Glenn Gardens and IPN, respectively, paid off their mortgages and exited the Mitchell-Lama program. Prior to their departures from Mitchell-Lama, Glenn Gardens and IPN each sent notification to New York City's Department of Finance ("DOF"), which administers the J-51 program, explaining that the particular building would no longer be subject to rent regulation under the PHFL and therefore no longer be entitled to J-51 tax benefits. Nonetheless, DOF simply failed to terminate Glenn Gardens' or IPN's benefits.

---

[2] In full, 28 RCNY § 5-03(f)(1) provides:

Rent regulatory requirements. (1) Rent regulation generally mandatory. In order to be eligible to receive tax benefits under the Act and for at least so long as a building is receiving the benefits of the Act, except for dwelling units which are exempt from such requirement pursuant to paragraph (2) below, all dwelling units in buildings or structures converted, altered or improved shall be subject to rent regulation pursuant to:

(i) the City Rent and Rehabilitation Law (§ 26-401 et seq. of the Administrative Code); or

(ii) the Rent Stabilization Law of 1969 (§ 26-501 et seq. of the Administrative Code); or

(iii) the Private Housing Finance Law; or

(iv) any federal law providing for rent supervision or regulation by HUD or any other federal agency; or

(v) the Emergency Tenant Protection Act of 1974.

According to both Glenn Gardens and IPN, they only learned of the oversight sometime later, and immediately contacted the City of New York to alert it to the mistake. *See* Special App'x 11. The New York City Department Housing Preservation and Development agreed to retroactively terminate Glenn Gardens and IPN from the J-51 program as of the date of their respective formal exits from Mitchell-Lama.

Naturally, after leaving Mitchell-Lama, Glenn Gardens and IPN raised rents—which, perhaps unsurprisingly, led to the application of yet another government-sponsored housing program. Under Section 8 of the Housing Act of 1937, commonly known simply as "Section 8," the federal government provides funds to local housing authorities, which then subsidize rental payments for qualifying tenants of privately-owned buildings. *See* 42 U.S.C. § 1437f(o)(1)(A). In particular, qualifying tenants of a building which exits a rent regulation program may receive "enhanced vouchers"—essentially, payments to help offset the increase in rent. *See id.* § 1437f(t). A number of families living in Glenn Gardens or IPN received Section 8 assistance after the buildings exited Mitchell Lama.

The United States would now like to recover certain of those Section 8 payments, which it believes were made in error. The United States contends that Glenn Gardens and IPN remained subject to rent regulation so long as they received J-51 benefits and, therefore, the buildings should not have charged market rents immediately after their exit from Mitchell-Lama (or before their retroactive formal exits, which were not accomplished until March of 2008 for Glenn Gardens and March of 2006 for IPN). Accordingly, the United States argues that Glenn Gardens and IPN should return the value of the enhanced vouchers.

Glenn Gardens and IPN argue that termination of their J-51 benefits was mandatory upon withdrawal from Mitchell-Lama, and, hence, that withdrawal from Mitchell-Lama immediately removed them, as a matter of law, from rent regulation. The District Court granted summary judgment to Glenn Gardens and IPN, concluding that the buildings were no longer subject to rent regulation upon their exit from Mitchell-Lama. The United States now appeals.

## DISCUSSION

As explained above, this case involves the interplay between several local and federal housing rules and statutes that are complicated when taken alone, and positively labyrinthine when taken together. The United States relies chiefly on the Rent Stabilization Law itself, which provides that rent stabilization shall apply to "[d]welling units in a building or structure receiving the benefits of section 11-243 [formerly J-51] or section 11-244 of the code . . . ." RSL § 26-504(c). According to the United States, *all* buildings that receive J-51 benefits are therefore subject to the Rent Stabilization Law, even if they are also subject to the PHFL. Under the United States' theory of

4

dual regulation, a building regulated by the PHFL receiving J-51 benefits is subject only to the rules of the PHFL unless and until it leaves Mitchell-Lama, in which case the Rent Stabilization Law takes over.

Glenn Gardens and IPN rely principally on New York City's rules governing the J-51 program. Under 28 RCNY § 5-07(f)(3), which was in effect at the time relevant to this litigation,[3] "[t]he Commissioner of the Department of Finance or the Commissioner of the Department of Housing Preservation and Development *shall withdraw* tax exemption and tax abatement granted to a building pursuant to the Act upon the happening of . . . [t]he building ceas[ing] to be subject to the rent regulatory provisions of law set forth in § 5-03(f)(1) . . . ." (emphasis supplied). Glenn Gardens and IPN interpret this provision as mandating withdrawal from J-51 benefits as soon as the building ceases to be part of whatever rent regulation scheme had rendered it eligible for the J-51 program in the first place. In other words, a building that is subject to the PHFL may join the J-51 program without being subject to the Rent Stabilization Law, and may continue to receive J-51 benefits until it is no longer subject to the PHFL.[4]

The question raised in this appeal, therefore, is whether receipt of J-51 benefits places a building under the Rent Stabilization Law, or whether a building simply remains eligible for J-51 benefits so long as it is under the ambit of one of the enumerated rent regulation schemes. When, as here, "we are faced with a question of New York law that is decisive but unsettled, we may 'predict' what the state's law is, consulting any rulings of its intermediate appellate courts and trial courts, or we may certify the question to the New York Court of Appeals." *Windsor v. United States*, 699 F.3d 169, 177 (2d Cir. 2012).

Fortunately, we have as guidance a recent decision of the First Department of the Appellate Division of New York's principal trial court that is precisely on point. *See C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967) ("[A]n intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (internal quotation marks and alteration omitted)); *see also Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 155 (2d Cir. 2012) ("Because the New York Court of Appeals has yet to resolve the issue before us, we turn to the decisions of the trial and intermediate appellate courts of New York state."). Indeed, the litigation before us now is not the only one spawned by the withdrawal of Glenn Gardens and IPN from Mitchell-Lama. In 2005, tenants who entered market-rate leases at IPN brought suit in state court, making the same

---

[3] Section 5-07(f) was eliminated from New York City's Administrative Code in April 2010. *See Denza v. Independence Plaza Assocs., LLC*, 941 N.Y.S.2d 130, 133 n.1 (1st Dep't 2012).

[4] RSL § 26-504(c), which applies the Rent Stabilization Law to buildings joining the J-51 program would therefore only apply to buildings that are not otherwise rent-regulated but wish to become rent-regulated in exchange for a tax exemption or abatement. *See Denza*, 95 N.Y.S.2d at 134.

claim that the United States does here—namely, that IPN's receipt of J-51 benefits after its withdrawal from Mitchell-Lama subjected it to the Rent Stabilization Law. *See Denza v. Independence Plaza Assocs., LLC*, 941 N.Y.S.2d 130, 132 (1st Dep't 2012). The trial court granted summary judgment to the tenants, but the First Department reversed, holding:

> IPN's continued receipt of J-51 benefits after it exited the Mitchell-Lama program was merely the erroneous result of DOF's failure to adjust IPN's tax liability following its receipt of notice that the property would be restored to full taxpaying status as of June 28, 2004. That error did not create rent stabilized status for a development that was not otherwise subject to the Rent Stabilization Law.

*Id.* at 134. The Court of Appeals subsequently denied leave to appeal. *Denza v. Independence Plaza Assocs., LLC*, 19 N.Y.3d 816 (2012).

We see no reason to belabor the point. We have little trouble "predicting" that the First Department's conclusion would be the law of the state.[5] Nor are we persuaded by the United States' claim that we should certify the question—which, again, the Court of Appeals already declined to hear. We conclude that neither Glenn Gardens nor IPN became subject to the Rent Stabilization Law upon exit from Mitchell-Lama.

The United States contends that, even if the Rent Stabilization Law does not apply, Glenn Gardens and IPN were not permitted to immediately exit rent regulation because the J-51 rules require that each "unit shall remain subject to rent regulation until the occurrence of the first vacancy after tax benefits are no longer being received." 28 RCNY § 5-03(f)(3)(i)(A). As the District Court pointed out, however, the statute that authorizes this rule only permits local laws or ordinances to limit deregulation for "dwelling unit[s] subject to rent regulation . . . *as a result of* receiving a [J-51] tax exemption or abatement." N.Y. Real Property Tax Law § 489(7)(b)(2) (emphasis supplied). Accordingly, the J-51 deregulation provision relied upon by the United States cannot apply to Glenn Gardens or IPN, neither of which were rent-regulated *as a result of* receiving a J-51 tax abatement (since they were both rent-regulated under Mitchell-Lama).[6] The District Court therefore properly granted summary judgment to Glenn Gardens and IPN.

---

[5] We note that in its opening brief, which was written before the First Department reversed the state trial court, the United States argued vigorously that we must give full faith and credit to the ruling of the state court. Presumably, that logic holds true even though the state court ruling is no longer favorable to the government.

[6] The United States contends that § 489's limitation on the J-51 deregulation rule cannot apply to Glenn Gardens because § 489(7)(b)(2) applies to "any dwelling unit subject to rent regulation on or before [June 18, 1985,] as a result of receiving a tax exemption or abatement," and Glenn Gardens and IPN began receiving J-51 benefits after that date. But that date appears to restrict the type of apartments that can be subject to the J-51 deregulation rule—not, as the United States suggests, to *expand* the application of the deregulation rule to all buildings that joined the J-51 program after June 18, 1985. *See Walsh v. Wusinich*, 821 N.Y.S.2d 182, 183 (1st Dep't 2006).

**CONCLUSION**

We have reviewed the record and the parties' arguments on appeal. For the reasons set out above, we **AFFIRM** the May 12, 2011 judgment of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court